UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOSHUA HARRISON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CV-099 JD |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

Joshua Harrison, a *pro se* prisoner, filed a habeas petition challenging a prison disciplinary

proceeding (DE 1.) In WCU #12-08-0140, a hearing officer at Westville Correctional Facility

("Westville") found Harrison guilty of violating disciplinary rule #102, battery on a staff member

by bodily fluid. (DE 7-8.) The charge was initiated on August 3, 2012, when Officer W. Collier

wrote a conduct report stating as follows:

> On the above date and approx. time [8-3-12 at 3:15 p.m.], I Ofc. W. Collier was on
> the four hundred range of A-Pod. I Ofc. W. Collier walked passed Offender
> Harrison, Joshua #132627 cell when he began to throw an unknown liquid substance
> from the side of his cell door, hitting me on my lower back as well as my [fore]arm.

(DE 7-1.) Photos were taken of the officer in his uniform after this incident and included with the

conduct report. (DE 7-2, 7-3.)

On August 21, 2012, Harrison was formally notified of the charge and given a copy of the

conduct report. (DE 7-4.) He pled not guilty, requested a lay advocate, requested a witness statement

from another offender, D. Rhymes, and requested that camera evidence be reviewed. (*Id.*) A

statement was obtained from Rhymes, who stated as follows: "I was at my door when the officer and

Harrison exchanged words and did not see any liquid substance come from Harrison Area. There

was water all over the floor due to the range being flooded." (DE 7-5.) The surveillance video was

reviewed by Officer J. Linscott, and it was noted that Officer Collier could be seen in front of

Harrison's cell door at the date and time specified in the conduct report. (DE 7-6.) The remainder of the video was summarized as follows: "There is already a large quantity of a liquid substance on the floor. So, it is inconclusive as to any liquid substance coming out of all A4-205." (*Id.*)

On October 9, 2012, the hearing officer conducted a hearing on the charge. (DE 7-8.) Harrison made the following statement: "Mr. Lowry and Capt Payne say that on the video you can't see anything being thrown from my cell. They were present when Linscott reviewed the video. My case is over 70 days old & I have not gotten a continuance. I am of guilty of a 236."[1] (*Id.*) The hearing officer found him guilty, stating, "C/R & picture of C/O support a 102." (*Id.*) Among other sanctions, Harrison lost earned-time credits and received a credit-class demotion. (*Id.*) His administrative appeals were denied (DE 7-9, 7-10), and he thereafter filed this petition.

When a due process liberty interest is at stake in prison disciplinary hearings, the Fourteenth Amendment guarantees prisoners certain procedural due process protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Harrison raises six grounds for relief in his petition. (DE 1.) Three of his claims are based on an argument that officials took too long to process his case in violation of the timelines specified in prison policies. (DE 1 at 3-4.) However, even if Harrison is correct that IDOC policies were not followed, it would not entitle him to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68

---

[1]  Under Indiana Department of Correction ("IDOC") disciplinary rules, a "236" refers to disorderly conduct. *See* IDOC Disciplinary Process for Adult Offenders, Policy 02-04-101 (Jan. 15, 2011).

(1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law").

Harrison also claims that he was denied due process because the witness statement from Rhymes was not considered. (DE 1 at 3.) A prisoner has a limited right to call witnesses and present evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer may deny a witness or evidence request that threatens institutional goals or is irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence); *see also Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996) ("exculpatory evidence" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt"). The denial of the right to present evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *Piggie*, 342 F.3d at 666.

Here, the record shows that Harrison requested a witness statement from Rhymes at screening, and a statement was obtained as he requested. (DE 7-5.) The hearing officer failed to check the box on the hearing report indicating that she considered this witness statement, but she submits an affidavit attesting that this was simply an oversight, and that she did consider the statement from Rhymes in reaching her decision.[2] (DE 7-8, 7-11.) Harrison does not dispute this

---

[2] She makes the same declaration about the video evidence, which she considered but failed to reference on the hearing report. (DE 7-11.) Harrison does not make a specific claim about the video not having been considered, although he does claim that the evidence was insufficient because the video was inconclusive. (DE 1 at 4.) This claim is addressed separately herein.

assertion, but argues that her failure to rewrite the hearing report to reflect this information violated his due process rights. (DE 9.) Giving his argument liberal construction, he may be claiming that the hearing officer's written statement was inadequate because it did not reflect the complete record.

The written statement requirement is "not onerous" and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Here, the hearing officer explained her finding of guilt as follows: "C/R & picture of C/O support a 102." (DE 7-8.) While this statement was particularly brief, it adequately illuminated her reasoning, specifically, that despite Harrison's argument that he was only guilty of disorderly conduct, the account of Officer Collier and the photos of him after this incident supported a finding of guilt on the higher charge. The case essentially boiled down to a credibility determination, and her summary demonstrates that she chose to credit the account of the officer. While it would have been better had she thoroughly recorded all the evidence, her written statement satisfied the minimal requirements of due process. *See*, *e.g., Pardo v. Hosier*, 946 F.2d 1278, 1284 (7th Cir. 1991) (where charge essentially required determination of whether inmate's or guard's account was more credible, the following summary was constitutionally adequate: "[B]ased on resident's statements and officer's report the committee is convinced resident violated AR 804 by cursing, making improper and disrespectful remarks to an employee and thereby causing a general disturbance."); *Culbert v. Young*, 834 F.2d 624, 626-27 (7th Cir. 1987) (disciplinary board's summary was adequate where it stated, "[O]n statements in C.R. by Staff in guilt finding that inmate was disrespectful [and] caused a disruption by his actions," despite existence of evidence negating guilt). Mindful of the large number of hearings conducted, in the future the Court would encourage the hearing officer to make somewhat expanded findings, as necessary.

4

Furthermore, even if Harrison could establish a due process error on this ground, he has not demonstrated any prejudice. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (employing harmless error analysis to due process error in disciplinary proceeding). He makes a vague assertion that the hearing officer's failure to rewrite the hearing report impacted his administrative appeals (DE 9), but it is unclear why this is so. The record shows that he completed both levels of appeal raising many different arguments. (DE 7-9.) He mentioned the failure to consider Rhymes' statement, but also raised other arguments about the sufficiency of the evidence and the lack of compliance with IDOC polices. (*Id.*) If anything, the hearing officer's failure to properly document that she considered Rhymes' statement supplied Harrison with a potentially meritorious issue for appeal.

However, even if her oversight somehow prejudiced his administrative appeal rights, it would not entitle him to federal habeas relief. Appeal rights are not one of the rights enumerated in *Wolff,* and the court cannot require additional due process protections beyond those specified in *Wolff*. *See Wolff*, 418 U.S. at 564-66; *see also Sanchez v. Miller,* 792 F.2d 694, 702 (7th Cir. 1986) (observing that *Wolff* "sets forth specific minimum procedures and expressly leaves the development of additional safeguards to the discretion of the prison authorities"). Accordingly, Harrison has not established a due process violation on this ground.

Next, Harrison challenges the sufficiency of the evidence. (DE 1 at 4.) He argues that he could not be found guilty because the video was inconclusive, and because no other officer submitted a witness statement to corroborate Officer Collier's account. (*Id.*) This was not a criminal proceeding, and the hearing officer was not required to prove his guilt beyond a reasonable doubt. *See Hill*, 472 U.S. at 457. Instead, the standard is whether there is "some evidence" to support the finding of guilt. *Id.* This is not a high standard, and in assessing the sufficiency of the evidence courts do not "conduct an examination of the entire record, independently assess witness credibility,

5

or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). The court will overturn a guilty finding based on insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Furthermore, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Upon review, there is sufficient evidence to support the hearing officer's determination in this case. Officer Collier reported that when he was in front of Harrison's cell, Harrison threw a liquid at him, which got on his back and forearm.[3] The video was inconclusive as to whether Harrison threw a liquid, but it corroborated other aspects of Officer Collier's account as far as where and when this incident occurred, and that there was liquid on the floor at the time. (DE 7-6, 7-11.) Rhymes' statement was also inconclusive, since it stated only that he personally did not *see* any liquid coming from Harrison's cell. (DE 7-5.) Harrison did not make an outright denial at the hearing, and instead conceded his guilt to a lesser offense. (DE 7-8.) To be constitutionally adequate, the evidence need not point to only one logical conclusion; rather, the question is whether there is some evidence to support the hearing officer's determination, and that standard is satisfied here. *See Hill*, 472 U.S. at 457 ("Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.*"); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements

---

[3] Photos were also taken of the officer after this incident, but the copies that have been provided are not clear enough to assess whether the officer's uniform is wet. (DE 7-2, 7-3.)

constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination).

Harrison also appears to claim that he was denied an impartial decision-maker. (*See* DE 1 at 3.) In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and the constitutional standard for improper bias is high. *Piggie*, 342 F.3d at 666. Due process is violated if a prison official who is substantially involved in the underlying incident also acts as a decision-maker. *Id.*; *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Harrison does not allege that this occurred here, nor is there any indication from the record that the hearing officer was involved in any way in the incident leading to the disciplinary charge. Harrison appears to argue that the hearing officer was biased because she failed to consider the witness statement from Rhymes. (DE 1 at 3.) However, as noted above, the evidence before the court shows that she did obtain the statement as requested and considered it in reaching her decision, even though she failed to properly document it on the hearing report. Harrison also suggests that she was biased because she found him guilty even though the video was inconclusive, but adverse rulings alone do not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994). Accordingly, he has not established a due process violation on this ground.

For these reasons, the petition (DE 1) is DENIED.

SO ORDERED.

ENTERED:   October 21, 2013

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court

7